Before we begin, so for everyone who's going to be presenting this afternoon their arguments, Justice Barberis is unable to be here due to a conflict in scheduling. He will be a participating member of this court. He will have the benefits of the oral arguments today, as well as, he said, the benefits of the brief, the arguments in the brief. So unfortunately, he can't be with us today, but he will be involved in deciding your case. Thank you. You may proceed. Good morning. May it please the Court, Counsel. I'm Michael Block along with Kyler Duncans for Mr. Montgomery, the plaintiff in the case. This case, I believe, brings three issues to the appellate court, which are de novo. The first is the applicability of Section 8.7I3, the Utilization Review portion of the Illinois Workers' Compensation Act. The second is the order of the commission, which removes all non-university-based doctors from potential care for Mr. Montgomery, as well as specifically removing Dr. Kelly from his case. And the third de novo issue is that the commission, instead of using the standards which we think are set forth in the Bob Red remodeling case and in the Rockford Clutch case, used a best interest or what's the most appropriate care for Mr. Montgomery standard, which we find, which we argue has no basis in statute or case law. Section 8.7I3, I think, is pretty clear. It starts out, the employer may only refuse to authorize payment of medical services rendered or proposed to be rendered on the grounds of extent and scope of medical treatment is excessive and unnecessary in compliance with an accredited UI. It's not a stage of creating new defenses. It simply states if there is treatment proposed and the other types of defenses like liability or cost of connection aren't in play, so it's just a question of is this the right treatment, then you go get a Utilization Review. And, of course, when the statute says unnecessary, it's the opposite of necessary. And, of course, the statute generally is reasonable and necessary, always has been, since 1975 at least. So if it's necessary, some treatment is necessary, but that doesn't mean you get all the treatment. You only get what's reasonable. In other words, it can't be excessive. That's exactly what the statute covers. And in this case, the employer did get a Utilization Review, but they only reviewed biofeedback, acupuncture, and epidural steroid injections. They didn't review things like ocular therapy, integrated manual therapy, which is what Dr. Shiab is a specialty, nor, I think somewhat importantly, did they review the prescriptions in this case. And we get UIs all the time that will say this medicine is the wrong medicine or this medicine is too much of a dose. It never happened here. So we deposed Dr. Rubino, the Utilization Review doctor, and were quite surprised to find out that she had never seen the Utilization Review report. Not only did she not write it, she neither signed off on it either. So this was basically a report that was made by the company. She was, like I say, never asked to decertify the medications, and she testified that the three things she was asked to certify, that biofeedback and acupuncture, are always okay, and that acupuncture, and this will get to a point I hope to make later, is the only modality that was addressed in the autonomic nervous system, which is one of the things that is affected by chronic regional pain syndrome. And that's according to everyone who's opined on it, including Respondent 2nd, Section 12 doctor, Dr. Stanton-Hicks. Interestingly, Dr. Stanton-Hicks is quite the contrary and says there is no evidence that acupuncture helps chronic regional pain syndrome. Now these aren't any of the employer's doctors. One says you do it, and one says you don't. Same thing with epidural steroid injections. This was the only thing that Dr. Rubino decertified, not so much by her report, because it wasn't her report, but by her testimony. Actually with no report, we should consider nothing really decertified, but she did testify that, in her opinion, epidural steroid injections were harmful and should not be used, with respect to Mr. Montgomery, which is, again, contrary to Dr. Stanton-Hicks, again, their doctor, who says epidural steroid injections are reasonable. And both these doctors are experienced in RSD. So the other things that Dr. Rubino said is that all modalities except ESI should be used together. In other words, you don't do just one or just the other. You do it all, because you have a person who's a chronic pain patient, and they get depression, they get anxiety. All the doctors agree on that. So in the end, the long and short of it was that all Dr. Rubino really wanted was a schedule. And actually that utilization review didn't even include Dr. Rubino's phone number, so the treating doctor could call her, nor apparently did she have the ability to call the treating doctor, because they never made a connection. So wanting a schedule, the frequency, everything. And after treating at a number of different places, for the last eight years prior to trial anyway, and for I think the last five or six years prior to this, Mr. Montgomery treated with two doctors that actually started out treating him at the same pain clinic. There was Dr. Zabiega was the last doctor treating him. Well, Dr. Kelly, who's the one that was disenfranchised, if you will, by the commission, had been treating Kurt, but Dr. Zabiega, and these are both well-qualified neurologists, I'll talk about their qualifications in a minute, Dr. Zabiega moves to Joliet with his office, and so Kurt says, well, this is closer, so I'll treat with him. And he's treating with him for about two and a half years in between the eight years that Dr. Kelly had treated him prior to the issues arising in this case. And what Dr. Zabiega did is he developed a life care plan with the life care planner, which is Exhibit 52. And it had everything in it, and what I think is important here is that their second Section 12 doctor, Dr. was he thought the frequency of MRIs was too much, they should only be given when he gets worse, when there's flare-ups or whatever, and he, as I said earlier, he thought acupuncture wasn't appropriate. There was another doctor, Dr. Gruff. After Dr. Stanton Hicks' report, and this is what the commission relied on quite a bit, his first thing was to start out at a multidiscipline pain clinic. So he went to Dr. Gruff, who's in Oak Brook, who runs a clinic, and Dr. Gruff reviewed the same plan, and he said everything is fine. He agreed with Dr. Stanton Hicks, except aqua therapy should be by a registered therapist, not just doing it on his own. Not one doctor disapproved of the treatment plan. No one. Counsel, let me ask you this. Does the law require the commission, is the plan binding on the commission? Do they have to accept it as it is? Well, I think the commission, as any fact-finding body, has to weigh the evidence. But when the evidence is, this is the appropriate plan, there's section 12, doctor has a chance to review it, it says yes minus two. I think at that stage the evidence supports it's yes minus two at worse or just yes. What about the argument the utilization review is only one piece of evidence that the commission should consider when evaluating the reasonableness and necessity of medical treatment? Well, of course, it's the legislature to write as they wish, and what they wrote is the employer may only refuse to authorize payment of medical services, and only is not used very often in the Workers' Compensation Act at all. And they say it may only be used to, they can only refuse to authorize payment based on a utilization review. So that's what the legislature wrote. Can I ask you something a little more basic? Pardon? What did the commission order in reference to medical expenses? Medical expenses is a different issue. They ordered that all medical expenses be paid. No, what they ordered was that respondents should pay all outstanding reasonable and related medical expenses. Who decides whether a bill is reasonable? Well, I think it was intended by the bill. In Paragraph 5, they say that they ordered all bills for necessary and related treatment, attendant care, or travel are to be directed for approval and payment to the respondent. And that's all necessary bills. They ordered all reasonable bills to be paid, and they never decided what those bills were. So tell me where the finality is. Well, as to the bills, I think what they were following is the Springfield Urban League case, which we cited, which did allow such a type of order. I mean, the one thing that would be disastrous for a chronic pain patient who hasn't been afforded the care that everybody agrees he needs is to have the commission come up with an order that is going to make a decision as to whether that, but I believe this is a final order. If the Respondent didn't pay Dr. X, who would make a decision as to whether Dr. X would bill for reasonable and necessary medical expenses? Well, I think any time you have open 8A, there's going to be continuous issues of medical care and treatment. No, of course, that's from the decision forward, not from the decision backwards. Not from the decision backwards. Only from the decision forward, you're always going to have questions as to reasonable and necessity of medical bills. But once a hearing is held, it's the commission to decide which of the bills that were incurred prior to the date of that hearing were reasonable and necessary for the injury suffered by the claimant. Well, I don't think it's inappropriate for the commission to say the parties can submit the bills because they are ordering the bills to be paid. And to be honest, if you look at the rules. Which bills? Which bills? What time frame? I think they ordered all of them. No, they said all bills should pay all outstanding reasonable and related medical bills. Who decided what was reasonable? If they would have said all bills that were submitted, we'd have an answer. Assuming that you introduced bills. And, Judge, that's the other thing. I think that because the medical care was, if you will, the issue in the case, you're right. We could have waited until later on the bills. But then there's an argument. No, no, no. I didn't say you could have waited later on the bills. If you were seeking payment for medical expenses, you had to submit bills to the commission. And the commission would have to rule as to whether those bills were reasonable and necessary and whether the Respondent had to pay and how much the Respondent had to pay. They can't inherit the statutory language without making a finding, I think, is what Justice Hoffman is saying. And where's the articulation of which ones meet the criteria, the obligations that are given under the statute? Well, I see what you're saying, Judge. But I think in 8A, 19B type proceedings, I think they are, even when they punt on something like this, I think it's still a final order for all purposes of the rules and the precedent that says the whole idea is to give prop benefits to an injured worker, and you're not going to do that. Counsel, there's no question that if you had introduced bills and the commission had ruled that those bills were reasonable and necessary, they would have entered a final order. Now, it appears as if the Respondent interprets the decision as requiring the payment of only future bills, which doesn't make any sense at all, because he incurred those bills, and you asked for a payment of medical expenses, did you not? Well, yes, it was appropriate. They were incurred. They were longstanding. It was a trail of 17 unpaid providers. But that being said, I think in a 19B and 8A, for purposes of finality, it should be a final order because the crux of the proceeding is not the bills. It's really an ancillary issue. The crux of the proceeding is the treatment that, in this case, has been denied for years. To follow that to its logical conclusion, the commission would only have to say the Respondent is required to pay for all reasonable expenses if the injury was incurred as to any injury incurred out of the course of his employment. I'm not proposing that what they did was what we asked for. It wasn't. But the other suggestion is the commission could literally continue generally every case it decides on the basis of, well, you folks decide this, and we're not going to make a final order, when there certainly is a final order as to the medical treatment, which is really the crux of this appeal. Tell me which bill they said you should pay, that the Respondent should pay. Which bill? Well, they said... Which provider? Well, they said what they said, Judge. We understand they said what they said. But I interpret it their way as well, that they said pay all the bills unless there's a... No, they didn't say pay all. That is not what they said, Mr. Block. They said pay all outstanding reasonable and related medical bills. The word reasonable is in there, and they are the ones that have to make the determination of what's reasonable. And if they haven't made it, then where's the finality in the order that gave the Circuit Court jurisdiction to review it? Well, when you're talking about reasonable medical bills, it's basically all the bills that were put in evidence were put in without objection, except as to liability. So I think once the liability is established, and I think that's why they're interpreting the same way, I think it is a final order that should pay all the bills. Well, so let me just put this before you to get your opinion, get off the dime here. We've got law well settled. Whether medical expenses are reasonable and necessary is a question of fact for the commission. The commission's determination will not be overturned unless it is against the manifest weight of the evidence. You seem to be implying that once the bills go in pursuant to some plan or utilization review, that's the end of the ballgame. The commission has no further role, and we're parsing words back and forth. They still are entitled to rule on individual bills, are they not? They're certainly entitled to rule on individual bills, but I think when they're admitted, objected to only on the basis of liability, at that stage when they say the bills, reasonable bills should be paid, absent some claim that there's, here's the thing, reasonableness in amount is no longer in existence because of the fee schedule. So it's only in terms of reasonableness of, in terms of was the treatment not excessive? And when they're admitted without objection, with the claim being only denying liability or causal connection, I think that's pretty much final as far as the facts of this case go. So they waive the argument as to reasonableness? The employer, I believe they have. If you look at how the bills were introduced with all the exhibits, unfortunately there was a huge box of exhibits, and they all went in that way, and I think that's what the order means. Now, to be honest, the way I practice, if I found a bill that was unrelated, I would never require an employer to pay it. But all those bills were clearly, I believe, for the CRPS, and I think based on the fact they all went in without objection, I think the commission's order is appropriate. But your argument that the way you practice, and it's an unreasonable or irrelevant bill, you wouldn't pay it, that suggests it's non-final. You have some discretion there as to what to pay and not pay, and that's what I think the panel's wrestling with, is the finality of just what bills were disputed here. Well, and again, the bills were admitted, and the record will correct me if I'm wrong, and now I'm going by memory, but I believe the bills were admitted without objection except as to liability, because they were all bills from providers who had provided treatment for the CRPS of one form or another. And like I say, there was a trail of bills, and I think the commission ordered what it did, but I don't think reasonableness was really an issue. There was no doctor saying this bill isn't reasonable, this bill isn't reasonable, and that's why I think they didn't file it. It may not have been a real issue, but the fact of the matter is the commission still has to decide it. They have to issue an order. Pay Dr. X, X number of dollars, or pay Dr. X pursuant to the fee schedule. I mean, something that can be objectively determined as to what it is they said had to be paid. Counsel, you're going to have to spend all your time on this issue so far. Aren't there other points you want to make here? Yes, there are a lot of other points that I won't make now. I think both the Bob Redd and the Rockford Clutch case, we have two very well qualified neurologists who want the treatment plan that he wants, and that is, from our perspective, the issue in the case. And that treatment plan has been objected to by no one, and it should be ordered. These doctors, for example, Dr. Kelly, he was a professor, and he taught at two I think, to be honest, the real issue in this case with the drugs and everything else, because that is kind of the elephant in the room, is that Dr. Ruff, who is also well qualified, runs a multidisciplinary pain clinic, said the drugs are moderate for this condition. And I think the real issue is this. If we assume that these drugs will cause the plaintiff to pass prematurely, and that's what we're talking about with these drugs. Mr. Black, did the commission articulate any reason why they wanted to remove Dr. Kelly from serving? Yes. They thought he had missed some things, which were cured by the life care plan. Everything needed for treatment was in there. And when Dr. Kelly didn't order these things, it was because he was cut off by basically a fake UR and a doctor who was so unqualified to do the IME, the first doctor in the catheter use, that there were gestures testified that after reading his deposition it was inadequate and they required a second IME. And so they're blaming a doctor for not writing. And this is really a patient complaint, not an employer complaint, and respectfully not a commission complaint. If he's unhappy that the treatment's not enough, he can go somewhere else. He wasn't complaining about that. So, yes. And I think the issue is, basically, if he's going to have a shorter life with less pain because of these drugs, or a longer life with more pain, because that's really what we're dealing with, shouldn't it be the patient's choice, not anybody else's? Because it's a sad situation, but when they're talking about these opioids and everything, that's the underpinning nature. And the other thing I think that's very wrong in this case is he's a chronic pain patient. Now, they're treating him, to be honest, in my opinion, like a junkie. And here's the deal, so to speak. With a junkie, you can get him off the drugs. It's wonderful, because then they're a normal person again. They might have some cravings. With a chronic pain patient, you take away their drugs, the pain goes up, and they do other things. It's not fair to him. It isn't. And that's basically an important part of our case. The other thing is the commission used the wrong standard altogether, so they don't get any deference, in my opinion, because instead of using, was this a reasonable choice, they used, we're going to do what's best for him. There's nothing in the statute, nothing in precedent that says that's any kind of standard the commission uses. Patients get to choose as long as the choices are reasonable. And according to the case law, they're reasonable if they're by a well-qualified, competent physician. And in this case, two different well-qualified neurologists agreed with the plan, as did Dr. Gruff, who's a third well-qualified physiatrist. And no doctor is saying this plan is wrong. Dr. Stan Hicks, their doctor, he made two tweaks to it, MRIs and acupuncture. So why is this poor gentleman not getting treatment? It's a very sad situation. It's a sad situation for the commission, especially if, by what you're telling me, they can basically continue a case generally by just saying, well, we're not going to order the bills, we're going to just say pay reasonable bills. I think for purposes of a claim like this where you're seeking treatment that doesn't wait, part of a claim can be segregated out and remanded to the commission without saying every point has to be a final order. That's for you to decide, but that, I think, is appropriate. I mean, there's other issues, the radiculopathies. The chain of events, he had radiculopathies since Loyola, and they cut that out. The settlement contracts itself said the neck was injured in the case. There's other issues, attorneys' fees and costs, that's covered in penalties, that's covered in the briefs. But what they did to Mr. Schiavi, holding back the payments for Dr. Gruff when they were unhappy with the amount, what they did to the pharmacy when they cut off payment in June, four months before their IME of all pharmacy medications. Fortunately, President Bush signed a bill that Medicare will cover it, but he's still off a couple months to get his medication. Those type of things are horrible, and that's what Caterpillar did in this case. Counsel, your time is up. Time's up, so I have five minutes in rebuttal. Yes, you will. Thank you. Counsel, you may respond. Thank you. If it would please support, counsel. Michelle Lafayette with Gannon and Shapiro on behalf of Caterpillar Logistics. I agree in principle with Mr. Block that there's primarily three issues. And the one issue is there's also a cross-appeal pending that Caterpillar had filed, and actually, the cross-appeal filed goes to the exact issue that specifically that the commission's order is very vague as to what portions of the medical introduced into evidence we're supposed to pay. And there were a lot of disputes going to that. And we had asked that the case be remanded back to the commission with direction that they tell us exactly which bills they're finding reasonable and related and we should pay. Especially because when you look at their order, they find that the radiculopathies are not related. They're cutting Dr. Kelly out of the treatment. Are they meaning we need to pay the treatment that Dr. Kelly has provided to that point, or are they denying that? Are they only denying it going forward? So first and foremost on our cross-appeal, we were looking for a remand order back to the commission to address just the issue Justice Hoffman raised. To become a doctor now as well as a justice? I don't know. More traditional is better, right? The issue that I raised was jurisdiction. Correct. Yes. Whether the circuit court ever had jurisdiction to hear this case because of the wording of the commission's decision. That was the issue I raised. It's a jurisdictional question. It's not really a question that it's vague and they ought to straighten it out. I mean, somebody, when they came out with it, should have filed a motion asking them the specific question. What did you order for the payment of fees? And they could have resolved it. Yeah. I was not involved in the case at that point. I have not become involved until it was asked before this panel, so I'm not sure why that wasn't done. But I do know from the perspective of Caterpillar looking at this decision, there are a lot of questions about what we do and do not owe. So we are looking for a remand at this point to direct the commission to address the incurred medical liability and the extent of it. Beyond that issue, the question is really one of manifest weight of the evidence. Is the commission's determination of what treatment the employer should pay for going forward supported by the manifest weight of the evidence? And to get to that, the commission had to determine what was reasonable, necessary, and appropriate care moving forward. Let me ask you a question on that topic. Mr. Block was arguing that the commission erred because they removed Dr. Kelly, his current treating physician. Let me ask you about the second paragraph. Section 8A provides in the second paragraph, the employee may at any time elect to secure his own physician, surgeon, and hospital services at the employee's expense. The third paragraph in Section 8A provides the commission may order the employee to select another doctor certified or qualified in the medical field for which treatment is required. Does that give some choice to the employee? The employee does have choice, but at the same time, the choices that the employee make and the treatment that the respondent is responsible for still has to be reasonable, appropriate, and necessary. And what the commission is doing in this case is saying the care that Dr. Kelly is providing is not reasonable and appropriate. If you look at what Dr. Kelly was doing, he's increasing the opioids and the benzodiazepines throughout the course of this case. And you've got the record is replete with doctors that are recommending against that and actually saying it's dangerous. You've got Dr. Scott Setliolo who refuses to provide care when he comes back from Arizona, partially for that reason. You've got Dr. Lubino at Rush Pain Center that is trying to address the opioid and the benzodiazepines being used in conjunction with each other and taper those away. So it's your position, as was with regard to the medical expenses, although ostensibly it may be reasonable, it doesn't mean the commission has no authority to address the issue. Correct. There are limitations, in other words, to what can be selected. Correct. The commission still can look at all of the evidence, weigh the evidence, and say based on all of the evidence we've got here, and they've got a lot of physicians in this instance saying this course of care just to treat with opioids and benzodiazepine is not appropriate. In fact, you've got Dr. Stanton-Hicks, you've even got Dr. Groft, and you've got Dr. Lynch that want to begin a process of tapering that. And the claimant is, or the petitioner, Mr. Montgomery, is fighting that as all these doctors are saying this is in your best interest. Okay. Mr. Block made a somewhat, you know, it's a policy argument. Okay. Assuming we're all mortal, how do we choose to live our lives? With pain a longer period of time or a shorter period of time without pain? Who gets to make that decision? Well, I would agree with Mr. Block that the claimant gets to make the decision about how he wants to live his life. But when it comes to under the act what the employer is responsible for, there are limits to that. You know, if the claimant came and said, I want you to send me on a cruise somewhere, yeah, that would be great, but we're not responsible for that. Well, I think that's a little more. Yeah. I mean, what is the end goal of these doctors who want to wean him off painkillers of any kind, though they may be addicted? The end goal of them is to improve his quality of life, if you look at it. They want to get him off the drugs, which do shorten his lifespan. I mean, we could sit here for hours and talk about the opioid crisis and the benzodiazepines in this country. And this case, I think, highlights some of this. But it's to improve his quality of life by removing those from the treatment plan and replacing it with other things. I mean, we're not talking about a case that's going to be cheaper for Caterpillar as we move forward by removing those from the claim, because you're still talking about a lot of expensive medical procedures and medical intervention that's going to need to be done over the life of this claim. And what's the efficacy of that? Well, the efficacy of that is that the opioids in the benzodiazepine, as recognized by Dr. Stanton-Hicks and even by Dr. Gruff, is interfering with those other treatment modalities, and it's interfering with their ability to be successful. I mean, if you went through the program with Dr. Gruff, and in the discharge note, even Dr. Gruff notes that he had reviewed Dr. Kelly's records, had gotten in contact with Dr. Kelly about alternatives to the benzodiazepine and the opioids, and Dr. Kelly couldn't articulate why other drugs were not being considered. And those are physicians that were chosen by Mr. Montgomery. Dr. Gruff was. We didn't choose that program. Caterpillar didn't choose that program. So what the commission was doing in this case was looking at what is reasonable and appropriate care to manage the chronic pain moving forward. And, yes, they're relying on the proposal put forward by Dr. Stanton-Hicks, but they recognize there needs to be a focused program. It can't be a program where Mr. Montgomery gets mad at Dr. Lubino, Mr. Montgomery gets mad at Dr. Gruff, Mr. Montgomery gets mad at Dr. Lynch, and goes somewhere else because that's not helping move things towards a better quality of life and to a state of well-being and healthfulness. So from that perspective, I don't think the commission overstepped what their authority is. Their authority is to determine what is reasonable, necessary, and appropriate care. Mr. Montgomery came to them and said, you need to order some prospective care. They looked at all the evidence, and they entered an order addressing that. And we would ask that that portion of the decision be affirmed. If there's no further questions, we would rest on our briefs. I don't believe there are. Okay. Thank you. Thank you, Counselor. Counselor may reply. Thank you. The statute, I think, is very clear. It doesn't say who does the treatment. It says what the treatment is, and that's what the commission is supposed to determine. If it's reasonable and necessary, he should get it. If it's not reasonable and necessary, he shouldn't. But there is nothing in the statute whatsoever saying that the commission, or even implying that the commission has a right to pick what doctor can or cannot treat a particular patient, and what a can of worms it would make if they did have that right. I'll give you an example. Dr. Stephens, here's a funny thing. If Dr. Stephens hadn't had a military obligation, he would still be at Loyola treating the plaintiff, and we wouldn't even be here. But he had a military obligation. He left. If he comes back, opens his private practice, he can't treat him, because he's not from a major medical university. They've actually disenfranchised most of the doctors in the state of Illinois with their order. As far as, and here's a more important question, too. All these other modalities work as well. If you have an issue on the opioids, why is he not getting these other modalities, other than Caterpillar just stonewalling it with nothing behind them to do it? The U.R. doesn't really give them a basis to not pay for these other modalities, but now there's a commission order not allowing these modalities as, quote, premature, and the only doctor that has said he shouldn't do these modalities is Dr. Caterpillar, not any real doctor. As far as the opioids and benzoids, they were started under employer-directed care by Dr. Stephens at Loyola. That's how Mr. Montgomery got there. And, of course, the rest of the doctors following continued. Actually, the most drugs he was prescribed was with Dr. Gorski at the Silver Cross Pain Clinic. He prescribed, as I recall, OxyContin and Fentanyl together, which is, if you know anything about drugs, that is the super duper. They found a formula, if you would, that worked, which was less drugs, and that's what was done since. And counselors claim that Dr. Kelly consistently raised the opioids. I believe that's just untrue. I believe the last time he raised the medication was December of 2009, and then he raised it in part because he switched them to liquid morphine because of the GI issues. And it's after that that Caterpillar started with the utilization review a few months later, and then their initial Section 12 with Dr. Itkin that cut off all treatment. What is the efficacy of these other modalities of treatment? They all reduce pain somewhat. Basically, this is Dr. Block, unfortunately. Basically, I think what you do to a degree is trick the brain into thinking that you're feeling less pain. That's why things like biofeedback help. I think you know what that is, I hope. Okay. Acupuncture, it helps. The thing to help the best is integrated manual therapy. For whatever reason, it relaxes the body. When it relaxes the body, the pain goes down. These all work, and that's what Dr. Rubino, the UR doctor, said. And so you're saying these other modalities are not available to him. Because Caterpillar won't pay for them. That's the only reason they're not available to him. Dr. Kelly's prescribed it. The life care plan has it all in there, which I think should be implemented. And here's the thing with the opiates and benzoids, you're not dealing with someone who just started taking them where you say, oh, it's early, we can get them off. He's had a tolerance for them for 25 years, and they do reduce pain. And Dr. Carlson said, evidence-based medicine is the best, and if you've got something that's working, let it stay working. Why not? So basically, as far as the drugs interfering with other treatment modalities, I don't know where that comes from. I don't believe there's anything in the record or any doctors saying that. And as far as a focus program, the life care plan is a focus program. It's what needs to be implemented, what should be implemented. And no doctor is against it, and yet this poor human being can't get it with this commission system that basically decides to not address the bills. By the way, Justice Hoffman, just for the record, I do agree with you that they should have addressed the bills. That's why we put them in evidence. But they didn't. The question is, why didn't somebody ask them one of the questions you were entitled to ask them? Tell us what specific bills are to be paid. You're entitled to ask five questions, and you're supposed to answer them, legal or factual. Aren't those before the order of Senate bill that you asked them? Well, we understand that. But if you want to be paid medical expenses, you should ask them which bills should be paid. Well, Judge, you've done thousands of trials. If you want bills paid, you put them in evidence. That's what we did. Well, then, if they issued an opinion. We had a very nice list of everything, who paid what, what the balance was. Excuse me. If they issued an opinion that didn't specifically state which bills are to be paid, it's an interlocutory order. You should have gone right back to them and said, now tell us which bills are to be paid. You've got the evidence. Once they do, you've got an order. Actually, there was such a petition filed, and I'm embarrassed to say that it was filed by Caterpillar, because they had the same issue. Everybody, you know, that tries a case wants a result. I mean, that's why lawyers try cases. And the commission denied that, but I'm not sure it was specifically to address what bills should be paid. They wanted clarity of the order, I think. Now, they were pretty clear in their opinion that certain bills, a certain bill, was not related, were they not? I don't think any bill is unrelated. Other than when you get to the travel expenses, there were some that were beyond appropriate. Let's see what they said. And we would never collect those. Let's see what they said. You've got a list of bills in here. And they said, let's see, motion for recall. I don't know if I'm advocating for new law or not. They entered a finding in here that says currently the parties have appeared before the commission regarding outstanding medical payments, prospective medical treatment, and the Petitioner's motion for penalties and fees. The commission finds that the plaintiff has failed to prove that his radiculopathy is causally related to the April 8th accident, and therefore treatment and attendant care for radiculopathy is denied. That's pretty specific. Then they turn around and say he finds that his gastrointestinal issues are causally related, and that the Respondent is liable for reasonable and necessary medical treatment associated with the gastrointestinal issues. All bills for necessary related treatment, attendant care, or travel are to be redirected for the approval by the Respondent. And the Respondent shall pay for treatment and attendant care for necessary and related gastrointestinal issues. All bills for necessary and related treatment, attendant for care and travel, to be directed for approval. And the Respondent shall pay reasonable and necessary related expenses. What are they supposed to pay for? I think they're supposed to pay for other than they don't have to pay for the radiculopathy. Yeah. That's basically it. As you look at their brief, Judge, there's, I think, two bills they object to. That's it. Well, it's not a question of what they objected to or what you asked for. The question is, is there a final order over which the circuit court had jurisdiction, or is this merely an interlocutory order and somebody should have been back there in front of the commission immediately to find out what's reasonable and necessary? Tell us. I think if you look at the Springfield order, there's a list of cases that answer the same question. The Springfield order states, and it said it shall be according to the codes and according to the order. I was just going to try to assist. Sorry. I didn't mean to interrupt. No, my apologies. As a ministerial matter, the expenses should be listed on the order. First, so that, if necessary, a 19-G petition may be filed. That's the Springfield order. That's the proposition it stands by. But it allowed the appeal and entered a decision matter. The expenses should be listed on the order, so that, if necessary, a petition may be filed. And again, Judge, I don't quarrel with that. I really don't. But I think on a 19-B or 8-A, when they make an order like that, that's sufficient compliance with the Springfield League case to make it a final order where you can still make your rulings as they did in Springfield-Urban Lake and send it back for the commission to fix that. And I think that would be following the precedent of the Springfield-Urban Lake case. Okay. So you're saying jurisdiction attached to make that statement in the Springfield case? Yes. Okay. It must have for them to enter that ruling, as they did, because, as I recall, I believe they affirmed. Counsel, thank you for your honor. Thank you very much, both counsel, for your arguments in this matter. It will be taken as advisement that this position shall issue.